**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
         slitteral@bursor.com

*Attorneys for Plaintiffs and the Proposed Classes*
[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN GAGETTA and TRACIE GOMEZ, on behalf of themselves and all others similarly situated,<br><br>                            Plaintiffs,<br><br>     v.<br><br>WALMART INC.,<br><br>                            Defendant. | Case No.  3:22-cv-03757-WHO<br><br>**PLAINTIFFS' OPPOSITION TO WALMART INC.'S MOTION TO DISMISS**<br><br>Date:  December 7, 2022<br>Time:  2:00 p.m.<br>Courtroom: 2<br>Judge: Hon. William H. Orrick III |

**TABLE OF CONTENTS**

PAGE(S)

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARDS ....................................................................................... 2

     A.    Federal Rule of Civil Procedure 12(b)(1) ................................................. 2

     B.    Federal Rule of Civil Procedure 12(b)(6) ................................................. 2

     C.    Federal Rule of Civil Procedure 9(b) ........................................................ 2

III.    ARGUMENT ...................................................................................................... 3

     A.    Plaintiffs Have Standing to Pursue Their Claims ..................................... 3

     B.    Plaintiffs Have Standing to Seek Injunctive Relief .................................. 9

     C.    Plaintiffs Plausibly Allege Reliance on The Label's Omission of Information ............................................................................................... 10

     D.    The Complaint States a Claim Under the UCL for Unlawful Business Practices ................................................................................... 12

     E.    Plaintiffs Have Sufficiently Pled Their Claims for Breach of Implied Warranty ..................................................................................... 13

     F.    Plaintiffs Have Sufficiently Pled Their Claims for Unjust Enrichment ................................................................................................ 14

IV.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Berke v. Whole Foods Mkt., Inc.*,
   2020 WL 5802370 (C.D. Cal. Sept. 18, 2020) .................................................................. 5, 6, 7

*Boysen v. Walgreen Company*,
   2012 WL 2953069 (N.D. Cal. July 19, 2012).......................................................................... 8

*Brown v. Van's Int'l Foods, Inc.*,
   2022 WL 1471454 (N.D. Cal. May 10, 2022) .......................................................................... 9

*Bruton v. Gerber Products Co.*,
   703 F. App'x 468 (9th Cir. 2017) ........................................................................................... 14

*Coffelt v. Kroger Co.*,
   2017 WL 10543343 (C.D. Cal. Jan. 27, 2017) ......................................................................... 7

*Colgate v. JUUL Labs, Inc.*,
   345 F. Supp. 3d 1178 (N.D. Cal. 2018) .............................................................................. 8, 12

*Cook v. Brewer*,
   637 F.3d 1002 (9th Cir. 2011) .................................................................................................. 2

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .................................................................................................... 9

*Elgindy v. AGA Serv. Co.*,
   2021 WL 1176535 (N.D. Cal. Mar. 29, 2021).......................................................................... 9

*Farmers Ins. Exch. v. Superior Ct.*,
   2 Cal. 4th 377 (1992) .............................................................................................................. 12

*Fine v. ConAgra Foods, Inc.*,
   2010 WL 11595914 (C.D. Cal. June 29, 2010) ........................................................................ 5

*Ghirardo v. Antonioli*,
   14 Cal. 4th 39 (1996) .............................................................................................................. 14

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
   61 Cal. 4th 988 (2015) ............................................................................................................ 14

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
   2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ........................................................................... 5

*Hough v. Big Heart Pet Brands, Inc.*,
   2020 WL 7227198 (N.D. Cal. Dec. 8, 2020)............................................................................ 4

*In re Bang Energy Drink Mktg. Litig.*,
 2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ................................................................ 9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 546 F.3d 981 (9th Cir. 2008) ..................................................................................... 2

*In re Gupta Corp. Sec. Litig.*,
 900 F. Supp. 1217 (N.D. Cal. 1994) ........................................................................... 2

*Ingalls v. Spotify USA, Inc.*,
 2017 WL 3021037 (N.D. Cal. July 17, 2017) ............................................................. 10

*Johnson & Son, Inc.*,
 2021 WL 1788397 (N.D. Cal. May 5, 2021) ............................................................ 4, 9

*Kirchenberg v. Ainsworth*,
 2022 U.S. Dist. LEXIS 10171 (E.D. Cal. Jan. 18, 2022) .......................................... 13

*Koronthaly v. L'Oreal USA, Inc.*,
 2008 WL 2938045 (D.N.J. July 29, 2008) ................................................................. 8

*Krommenhock v. Post Foods, LLC*,
 255 F. Supp. 3d 938 (N.D. Cal. 2017) ...................................................................... 11

*Lanovaz v. Twining N. Am, Inc.*,
 726 F. App'x 590 (9th Cir. 2018) .............................................................................. 10

*Linear Technology Corp. v. Applied Materials, Inc.*,
 152 Cal. App. 4th 115 (2007) ................................................................................... 11

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) .................................................................................................. 4

*Mancuso v. RFA Brands, LLC*,
 454 F. Supp. 3d 197 (W.D.N.Y. 2020) ....................................................................... 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
 519 F.3d 1025 (9th Cir. 2008) .................................................................................. 2

*Maya v. Centex Corp.*,
 658 F.3d 1060 (9th Cir. 2011) ............................................................................... 4, 8

*Milan v. Clif Bar & Co.*,
 489 F. Supp. 3d 1004 (N.D. Cal. 2020) ................................................................... 10

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
 2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) ......................................................... 9, 10

*Pagendarm v. Life Ins. Co. of N. Am.*,
 2017 WL 6405617 (N.D. Cal. Dec. 15, 2017) .......................................................... 11

*Pels v. Keurig Dr. Pepper, Inc.*,
  2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ........................................................... 4

*People v. E.W.A.P., Inc.*,
  106 Cal.App.3d 315 (1980) ..................................................................................... 12

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
  2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ..................................................... 4, 13

*Rodriguez v. Just Brands USA, Inc.*,
  2021 WL 1985031 (C.D. Cal. May 18, 2021) .......................................................... 10

*Roney v. Miller*,
  705 F. App'x 670 (9th Cir. 2017) ............................................................................ 15

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
  552 F. Supp. 3d 901 (N.D. Cal. 2021) ...................................................................... 2

*Soo v. Lorex Corp.*,
  2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) .......................................................... 14

*Thomas v. Costco Wholesale Corp.*,
  2014 WL 5872808 (N.D. Cal. Nov. 12, 2014) ......................................................... 13

*Trazo v. Nestle USA, Inc.*,
  113 F.Supp.3d 1047 (N.D. Cal. 2015) ..................................................................... 14

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ................................................................................... 2

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................... 2

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ..................................................................... 13

*Vizcarra v. Unilever United States, Inc.*,
  2020 WL 4016810 (N.D. Cal. July 16, 2020) .......................................................... 10

*Washington v. Baenziger*,
  673 F. Supp. 1478 (N.D. Cal. 1987) .......................................................................... 3

*Watson v. Solid Gold Pet, LLC*,
  2019 WL 3308766 (C.D. Cal. Feb. 22, 2019) .......................................................... 11

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) .......................................................................... 2, 7, 11

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ..................................................................................... 2

*Zamani v. Carnes,*
   491 F.3d 990 (9th Cir. 2007) ............................................................ 8, 12

*Zeiger v. WellPet LLC,*
   304 F. Supp. 3d 837 (N.D. Cal. 2018) .......................................... passim

**STATUTES**

Cal. Bus. and Prof. Code § 17200 .......................................................... 12

Cal. Civ. Code § 1750 ............................................................................ 12

Cal. Civ. Code § 1770(a) ........................................................................ 12

Cal. Civ. Code § 1790 ............................................................................ 12

**RULES**

Fed. R. Civ. P. 8 .................................................................................... 14

Fed. R. Civ. P. 9(b) ........................................................................ 2, 3, 14

Fed. R. Civ. P. 12(b)(1) ............................................................................ 2

Fed. R. Civ. P. 12(b)(6) ............................................................................ 2

1

## I.    INTRODUCTION

Defendant Walmart, Inc. ("Defendant" or "Walmart") sells herbs and spices under its Great Value label, including Great Value's Basil Leaves, Chili Powder, Ground Cumin, Organic Ground Ginger, and Organic Paprika (collectively, the "Products").  Class Action Complaint ("CAC"), ¶1. A November 2021 report by Consumer Reports states that the offending herbs and spices, including the Products, "had high enough levels of arsenic, lead, and cadmium combined, on average, to pose a health concern for children when regularly consumed in typical servicing sizes.  Most raise concern for adults, too." *Id.* at ¶ 2.  But Walmart fails to disclose that the Products contain (or risk containing) lead, arsenic, and cadmium (collectively "Heavy Metals").  Approximately 94% of consumers have indicated in a consumer survey that the presence or risk of even a small amount of heavy metals in the spices would either be important or very important to their purchasing decisions.  *Id.*, ¶ 28. Nonetheless, and despite its knowledge of the existence of these Heavy Metals in its Products, Defendant fails to alert consumers that the Products contain (or risk containing) Heavy Metals.

Consumers of Defendant's Products are at risk because of the presence of the Heavy Metals. Specifically, "[n]o amount of lead is known to be safe," while "[a]rsenic is ranked first among toxicants posing a significant potential threat to human health based on known or suspected toxicity," and "[a]ny cadmium should be avoided." *Id.*, ¶¶ 13-15.  The reason for these determinations is obvious: lead can affect almost every organ and system in the body, inhibiting neurological function and causing anemia, kidney damage, seizures, and in extreme cases, even death. *Id.*, ¶ 13.  Arsenic is linked to cardiovascular disease and bladder, lung, liver, and skin cancer, and strokes and diabetes. *Id.*, ¶ 14.  Cadmium may likewise lead to damage to kidneys, lungs, and bones. *Id.*, ¶ 15.

Plaintiffs' claims are adequately pled, including exhaustive factual allegations and properly drawn legal claims.  Taking all of the allegations of the complaint as true, and setting aside Defendant's invitation to resolve disputed factual issues, the Court should deny the motion to dismiss in its entirety.

1

## II.   LEGAL STANDARDS

2

### A.   Federal Rule of Civil Procedure 12(b)(1)

3

When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

4

courts "take the allegations in the plaintiff's complaint as true." *Wolfe v. Strankman*, 392 F.3d 358,

5

362 (9th Cir. 2004).  Dismissal is only appropriate "if the complaint, considered in its entirety, on its

6

face fails to allege facts sufficient to establish subject matter jurisdiction."  *In re Dynamic Random*

7

*Access Memory (DRAM) Antitrust Litig*., 546 F.3d 981, 984-85 (9th Cir. 2008).

8

### B.   Federal Rule of Civil Procedure 12(b)(6)

9

In ruling on a Rule 12(b)(6) motion to dismiss, courts "accept factual allegations in the

10

complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

11

*Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).  "A claim may

12

be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of

13

his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011)

14

(quotations and citation omitted).  Factual disputes generally cannot be resolved on a motion under

15

Rule 12(b)(6). "The motion [to dismiss] is not a procedure for resolving a contest between the parties

16

about the facts or the substantive merits of the plaintiff's case." *Williams v. Gerber Prod. Co*., 552

17

F.3d 934, 938 (9th Cir. 2008).  If "the complaint's factual allegations, together with all reasonable

18

inferences, state a plausible claim for relief," the motion for dismissal must be denied.  *U.S. ex rel.*

19

*Cafasso v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1054 (9th Cir. 2011).  "A claim has facial

20

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

21

inference that the defendant is liable for the misconduct alleged."  *Scilex Pharms. Inc. v. Sanofi-*

22

*Aventis U.S. LLC*, 552 F. Supp. 3d 901, 909–10 (N.D. Cal. 2021).

23

### C.   Federal Rule of Civil Procedure 9(b)

24

Under Rule 9(b), fraud allegations must "be specific enough to give defendants notice of the

25

particular misconduct…"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

26

Knowledge and state of mind "may be alleged generally."  Fed. R. Civ. P. 9(b).  As to facts within

27

Defendant's knowledge, Rule 9(b) standards are "relaxed" prior to discovery.  *In re Gupta Corp.*

28

*Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994).  Similarly, for fraudulent omissions claims, Rule 9(b) is relaxed because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act."  *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987).

## III.     ARGUMENT

### A.     Plaintiffs Have Standing to Pursue Their Claims

Defendant first argues that Plaintiffs lack standing because "[t]he complaint is completely devoid of any allegations of actual injury suffered by the plaintiffs" as "Plaintiffs have not even alleged the products they bought contain any heavy metals at all … [nor] that they consumed the spices they purportedly purchased." MTD at 9.  Defendant's view of what Article III standing requires is wrong, for several reasons.

***First***, Defendant's argument conflates the question of whether Plaintiffs have standing with the question of whether Plaintiffs' claims have merit and should thus be rejected.  *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) (Orrick, J.) ("Defendants argue that plaintiffs cannot show any cognizable injury, because they cannot establish that defendants' Products contain unsafe amounts of arsenic, lead, or BPA.  Defendant's arguments largely go to the merits of plaintiffs' claims, and not their standing to bring those claims.").

Defendant is essentially arguing with Plaintiffs' economic injury damage theory, which the complaint sets forth: "Plaintiffs would not have purchased the Products at all or would have paid less for them if they had known of Defendant's omissions regarding that the Products contain (or risk containing) toxic Heavy Metals. Plaintiffs and the California Subclass members have all paid money for the Products.  However, Plaintiffs and the California Subclass members did not obtain the full value or any value of the advertised products due to Defendant's omissions regarding the toxic Heavy Metals.  Accordingly, Plaintiffs and the California Subclass members have suffered injury in fact and lost money or property as a direct result of Defendant's omissions."  CAC, ¶83.

Defendant's argument, however, has been repeatedly rejected.  Courts in this District have not only accepted Plaintiffs' theory of economic harm, but have also specifically determined that

plaintiffs who purchase food products suffer an injury requisite for Article III when those foods contain heavy metals. *See Kochar, et al. v. Walmart, Inc.*, No. 3:21-cv-02343-JD, ECF No. 51, p. 1 (N.D. Cal. Filed April 25, 2022) ("Named plaintiffs have Article III standing to sue because they plausibly alleged the economic injury of paying a premium for baby food advertised as healthy when it is said to have contained excessive levels of non-naturally occurring heavy metals."); *see also, Maisel v. S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at *3 (N.D. Cal. May 5, 2021) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)) ("A 'quintessential injury-in-fact' occurs when the 'plaintiffs spent money that, absent defendants' actions, they would not have spent.' Additionally, if plaintiffs 'state that they would not have purchased [a product] had there been a proper disclosure' of the relevant facts, that is sufficient to plead causation.' . . . . Thus, because Maisel alleges she purchased the Ecover dishwasher tablets and would not have if she knew they were mislabeled, the Court finds she has Article III standing to bring this case."); *Zeiger*, 304 F. Supp. 3d at 846 (holding that plaintiffs alleged a cognizable injury for purposes of standing because their claims were "premised on their allegation that were it not for defendant's labeling, which omit the presence of lead, arsenic, and BPA in their [contaminated dog food products], plaintiffs would not have purchased and spent money on their Products.").

**Second**, Defendant's citation of *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) and its repeated insistence that Plaintiffs have not alleged the products they purchased contained Heavy Metals, seems to imply that Plaintiffs were required to test their own Products to have standing. Such a position has no support in the case law and has been roundly rejected by this Court amongst others. *See Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *7 (N.D. Cal. Mar. 16, 2020) (Orrick, J.) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("Big Heart . . . argue[s] that plaintiffs are required to link the independent testing (that allegedly confirms that the representations on Nature's Recipe Food are false) to the Nature's Recipe Food products they purchased . . . . That argument is not persuasive . . . . In assessing standing on a motion to dismiss, the court must 'presume that [] general allegations,' like the ones alleged here, 'embrace those specific facts that are necessary to support the claim.'"); *see also Hough*

*v. Big Heart Pet Brands, Inc.*, 2020 WL 7227198, at \*2–3 (N.D. Cal. Dec. 8, 2020) (same); *Berke v. Whole Foods Mkt., Inc.*, 2020 WL 5802370, at \*7 (C.D. Cal. Sept. 18, 2020) ("Defendant argues that because there is no allegation as to how much arsenic was in the Starkey Water that Plaintiff *himself bought*, his alleged injury is speculative . . . . The Court disagrees."); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 202 (W.D.N.Y. 2020) ("Defendant argues that because no testing was performed on plaintiff's own power bank and because plaintiff's claimed injury relied on speculative extrapolation of a single set of test results, plaintiff has failed to allege a plausible injury in fact . . . At the pleading stage, however, more specific allegations are not necessary for Article III standing.").

Indeed, some courts have even determined that no testing at all is required either by the plaintiff or a third party to assert analogous claims. *See, e.g.*, *Fine v. ConAgra Foods, Inc.*, 2010 WL 11595914, at \*1 (C.D. Cal. June 29, 2010) ("While Plaintiff herself does not have direct knowledge of the presence of diacetyl in Defendant's products, Plaintiff relies on the work and statements of several health experts and alleges that '[k]nown substitutes for diacetyl still contain molecules of diacetyl.' At this stage of the litigation, the Court must view all material allegations in the Complaint as true and thus accepts Plaintiff's contention regarding the presence of diacetyl in Defendant's products.").

**Third**, Defendant's principal case on this question, *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, is facially distinguishable. *See* MTD at 5 (citing 2010 WL 3448531, at \*5 (N.D. Cal. Sept. 1, 2010)). There, the plaintiffs alleged that "1,4-dioxane and formaldehyde are *probable* human carcinogens" not that they "are in fact carcinogenic for humans." 2010 WL 3448531, at \*3 (emphasis added). As the court determined, the thrust of the plaintiffs' allegations was merely that the "ingredients [had] not been shown to be safe." *Id.*, at \*1. Here, by contrast, Plaintiffs support their allegations with experts from Consumer Reports who have determined that the Products "had high enough levels of arsenic, lead, and cadmium combined, on average, to pose a health concern for children when regularly consumed in typical serving sizes. Most raised concerns for adults, too." CAC, ¶ 2. Consumer Reports presented its results, organizing each spice by type as well as by brand. *See* Kiser Declaration, Ex. A, 12-19. Each of the Products Plaintiffs identify is

included on that list.  *See id.*[1]  As Plaintiffs allege, these results are concerning because "[e]ven modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions."   CAC, ¶ 12.

Plaintiffs then cite to the Centers for Disease Control and Prevention, noting that "[e]xposure to lead may cause anemia, weakness, and kidney and brain damage."  *Id.*, ¶ 13.  Plaintiffs also cite to academic articles hosted by the National Institute of Health, showing that "[a]rsenic can . . . cause bladder, lung, liver, and skin cancer, and strokes and diabetes."  *Id.*, ¶ 14.  Plaintiffs further include material from the Occupational Safety & Health Administration which has determined that cadmium is "known to cause cancer and targets the body's cardiovascular, renal, gastrointestinal, neurological, reproductive, and respiratory systems."  *Id.*, ¶ 15.  Accordingly, it is not simply *probable* that these metals cause harm, or that they merely *have not been shown to be safe*.  Rather, the metals in Defendant's spices have definitively been proven by reputable sources to cause harm to human health.  *See id.*, ¶¶ 12-15.  Consequently, Plaintiffs allege that "[h]ad [they] known the truth—i.e., that the Products contained Heavy Metals, rendering them unsafe for consumption by children and adults—they would not have been willing to purchase them or would have paid less for them."  *Id.*, ¶¶ 50, 5-18*W*.

**Fourth**, Plaintiffs' allegations in this regard are well supported by the case law.  In *In re Plum*, for example, the plaintiffs brought an action against "defendants Plum, PBC, and Plum, Inc., . . . . alleging that Plum failed to disclose that its baby food products contain (or have a risk of containing) heavy metals (namely, arsenic, cadmium, lead, and mercury), and perchlorate."  Case No. 4:21-CV-913-YGR (N.D. Cal. Jan. 12, 2022), Dkt. 125 at 1.  Judge Gonzalez-Rogers determined that "plaintiffs have adequately alleged an injury in fact by alleging that they 'would not have paid [the purchase price or the price premium] had they known that the Baby Foods included levels of Heavy Metals, perchlorate, and/or undesirable toxins and contaminants."  *Id.* (alteration in original).

Likewise, in *Zeiger*, the plaintiffs alleged that "[t]he Products contain[ed] 'material and significant levels of arsenic and lead,' 'known dangerous toxins for both humans and animals

---

[1] Other courts have permitted plaintiffs to succeed based on similar allegations supported by testing conducted by Consumer Reports.  *See, e.g.*, *Berke*, 2020 WL 5802370.

including dogs.'"  304 F. Supp. 3d at 842.  The plaintiffs further alleged "the defendant knew or should have known of the presence of these contaminants, but the Products d[id] not contain any warning label or disclose the presence of these contaminants."  *Id.*  This Court determined that the plaintiffs had alleged a "quintessential injury-in-fact" because "Plaintiffs' claims are premised on their allegations that were it not for defendant's labeling, which omit the presence of lead, arsenic, and BPA in their Products, plaintiffs would not have purchased and spent money on their Products."  *Id.* at 846.

Indeed, numerous courts have held similarly when presented with analogous facts.  *See Berke*, 2020 WL 5802370, at *6 (finding an injury in fact where plaintiff alleged that "he purchased and paid a premium for Starkey Water and had he known the truth [that the water contained arsenic] he would not have purchased Starkey Water or paid a premium for it."); *Coffelt v. Kroger Co.*, 2017 WL 10543343, at *5 (C.D. Cal. Jan. 27, 2017) (finding an injury in fact where "Plaintiff parted with money to purchase the subject vegetables" that "turned out to be adulterated and not fit for sale or human consumption" and where the plaintiff "suffered an economic loss that he would not have otherwise suffered had Kroger's representations on the packaging accurately reflected the risks associated with consuming their contents."); *In re Morning Song Bird Food Litig.*, Case No. 3:12-cv-01592-JAH-AGS (S.D. Cal. Sept. 30, 2013), Dkt. 44, p. 6 (determining that "[t]he Court finds Plaintiffs sufficiently allege an injury in fact to support standing" where "Plaintiffs allege they . . . spent money to purchase the bird food which was worthless because it was [contaminated with pesticides and] was not fit for consumption by birds.").

In the face of this precedent, Defendant's argument that Plaintiffs do not adequately allege Article III standing based on a price premium has no merit.  Defendant argues that "[i]t is a scientific fact that herbs and spice product . . . are likely to contain trace elements of naturally occurring metals. … But this scientific fact does not equate to injury…." MTD at 10. Even if Defendant's assertion of so-called "scientific fact" were cognizable on a motion to dismiss, *see Williams v. Gerber Products, Inc., supra,* 552 F.3d at 938, Walmart misses the point.  As Plaintiffs allege, quoting *Consumer Reports*, "'it is possible for herbs and spice companies to limit heavy metals in their products' as

'[a]bout two-thirds of the spices tested did not have any concerning levels of heavy metals.'" *Id.*, ¶ 22.  It just so happens that Defendant's Products were a part of the one-third whose levels of heavy metals did cause concern.

**Fifth**, Defendant's citations do not compel a different result.  *Boysen v. Walgreen Company*, for example, has no applicability as the levels of lead and arsenic alleged there fell "within the FDA advisory guidelines for [the] fruit juices" at issue.  2012 WL 2953069, at *5 (N.D. Cal. July 19, 2012); *see* MTD at 6.  By contrast, Plaintiffs here allege, for example, that "[n]o amount of lead is known to be safe."  CAC, ¶ 14.  As Defendant admits in its briefing, the FDA has not set guidelines for metals in herbs and spices.  *See* MTD at 4-5.[2]  Thus, this case is more analogous to *Zeiger,* in which the District Court distinguished *Boysen* on the same basis.  304 F. Supp. 3d at 846 ("This case is distinguishable for the simple reason that the FDA has not promulgated guidelines with respect to safe or acceptable levels of arsenic and lead in dog foods.").

Furthermore, *Koronthaly v. L'Oreal USA, Inc.* is also distinguishable because there, for example, the plaintiffs did not allege, as Plaintiffs do here, that they overpaid for the products at the time of purchase.  *Compare* 2008 WL 2938045, at *1 (D.N.J. July 29, 2008) *with* CAC, ¶¶ 5-18, 42, 50.  Nor does *Koronthaly* accurately reflect the law of this Circuit, as addressed above.  *See, e.g., Maya*, 658 F.3d at 1069 (9th Cir. 2011) (determining that "Plaintiffs' claim that they paid more for their homes than they were worth *at the time of sale*" was sufficient to confer Article III standing) (emphasis in original).

In short, Plaintiffs have adequately alleged an injury in fact for standing purposes.

---

[2] Noticeably, Defendant does not argue preemption or primary jurisdiction, and may not do so in reply.  *See Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1196 (N.D. Cal. 2018) (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)) (Orrick, J.) ("It is improper to raise a new argument in a reply brief.").

**B.      Plaintiffs Have Standing to Seek Injunctive Relief**

Defendant also incorrectly argues that "Plaintiffs also lack Article III standing to pursue injunctive relief because they fail to allege 'actual and imminent' and 'certainly impending' threatened or future injury."  MTD at 11 (citations omitted).

Each of the Plaintiffs allege that they "continue to desire to purchase the Product[s] from Defendant.  However, [they] are unable to determine if the Product[s] [are] actually safe" and that "as long as Defendant continues to market its Product as safe, [they] will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Product[s] and competitor's products" and that they are "further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products marketed, labeled, packaged and sold as [] quality and healthy spice[s] [are], in fact, [] quality and healthy spice[s]."  CAC, ¶¶ 6, 8.

In this way, Plaintiffs' allegations in support of their claim for injunctive relief are supported by the case law in this and other courts in this District.  *See Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022) (Orrick, J.) ("Because I can fairly interpret the complaint as alleging that Brown would purchase the products again in the future if they were not misleadingly labeled, Brown has sufficiently alleged standing to seek injunctive relief."); *see also Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2021 WL 3524047, at *5 (N.D. Cal. Aug. 6, 2021) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)) (finding the plaintiff had sufficiently alleged injunctive relief where "Plaintiff alleges that she continues to desire to purchase the Products if they were actually natural and would be unable to trust Defendant's label representations absent injunctive relief."); *In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *11 (N.D. Cal. Feb. 6, 2020) (same); *Maisel*, 2021 WL 1788397, at *6 (N.D. Cal. May 5, 2021) (same); *Elgindy v. AGA Serv. Co.*, 2021 WL 1176535, at *6 (N.D. Cal. Mar. 29, 2021) (same).

Still, Defendant argues that Plaintiffs cannot possibly be deceived in the future," because they are now aware that the Products contain Heavy Metals and thus are not at risk of future harm.  Not

so.  *See Vizcarra v. Unilever United States, Inc.*, 2020 WL 4016810, at *1 (N.D. Cal. July 16, 2020) ("Unilever argues that Vizcarra lacks standing to seek injunctive relief because she is now aware of the true source of the vanilla flavoring . . . Unilever's argument fails in light of *Davidson*."); *Moore*, 2021 WL 3524047, at *6 (same); *Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020) (same); *Ingalls v. Spotify USA, Inc.*, 2017 WL 3021037, at *6 (N.D. Cal. July 17, 2017) (Alsup, J.) (citations omitted) ("Such a rule would . . . in essence, give permission to defendants to continue their deceptive conduct 'because a plaintiff who had been injured would always be deemed to avoid the cause of injury thereafter ('once bitten, twice shy') and would never have Article III standing.").

Defendant's citations do not compel a different result.  *See* MTD at 8.  *Lanovaz v. Twining N. Am, Inc.*, is distinguishable for the simple reason that "Lanovaz stated that she would not purchase Twinings products again[.]"  726 F. App'x 590, 591 (9th Cir. 2018).  In *Rodriguez v. Just Brands USA, Inc.*, the plaintiff merely stated that "he 'may' purchase" the products in the future.  2021 WL 1985031, at *4 (C.D. Cal. May 18, 2021).  Thus, Plaintiffs have Article III standing to sue for injunctive relief.

### C.  Plaintiffs Plausibly Allege Reliance on The Label's Omission of Information

Defendant argues that Plaintiffs cannot plausibly allege reliance on Walmart's labeling, which omitted any disclosure that the Great Value herbs contain heavy metals, because "metals are naturally occurring and present across the food supply," and as a result, "the disclosure that effectively all food products 'risk containing' some heavy metal thus would be meaningless."  MTD at 12.

Defendant's argument rests on the fallacy of division. It assumes that because heavy metals may occur naturally in foods and water, that its Products were naturally contaminated and that they are only "trace amounts." MTD at 12.  Defendant's framing also suggests that there is nothing that can be done about such contamination, while *Consumer Reports* determined that "it is possible for herbs and spice companies to limit heavy metals in their products' as '[a]bout two-thirds of the spices tested did not have any concerning levels of heavy metals."  CAC, ¶ 22.

But this is a factual dispute that cannot be resolved on a motion to dismiss under Rule 12(b)(6). *Williams,* 552 F.3d at 938 ("whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer," *citing Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.") and cases cited therein.

Moreover, even if it were true that (1) heavy metals are "largely inevitable in the food supply," MTD at 12, and (2) that consumers are aware of such a fact, assertions that cannot be proved or disproved at this stage, Plaintiffs' claims would not be any less plausible. *See, e.g., Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017) (allegedly "widely known" risk of overconsuming sugar did not render misrepresentation claims implausible). Indeed, that notion is belied by Plaintiffs' consumer survey, which determined that 94% of approximately 500 consumers answered that the presence or risk of even a small amount of Heavy Metals in the spices would be either important or very important to their purchasing decisions. CAC, ¶ 28. Defendant's argument is also belied by several other of Plaintiffs' allegations. *See id.*, ¶ 4 ("No reasonable consumer would know, or have reason to know, that the Products contain (or risk containing) Heavy Metals); ¶ 31 ("Plaintiffs and the Class members would be unwilling to purchase the Products or would pay less for the Products if they knew that they contained (or risked containing) toxic Heavy Metals."). These allegations must be accepted as true. *See Pagendarm v. Life Ins. Co. of N. Am.*, 2017 WL 6405617, at *1 (N.D. Cal. Dec. 15, 2017) (Davila, J.) ("All well-pleaded facts in the complaint are accepted as true for purposes of adjudicating [a motion to dismiss].").

As in *Zeiger*, *supra,* which involved heavy metals in dog food, "Plaintiffs have provided an actionable theory why the Products are unsafe and why the labels are misleading." 304 F. Supp. at 852; *see also Watson v. Solid Gold Pet, LLC*, 2019 WL 3308766, at *5 (C.D. Cal. Feb. 22, 2019) (allegations "that the presence of Heavy Metals [] is a material fact for a reasonable consumer when purchasing the products, that she would not have purchased the products or paid a premium if she

had known about the contaminants, and that she had no way of acquiring this information on her own" were sufficient).  This is all that Rule 12(b)(6) requires.

### D. The Complaint States a Claim Under the UCL for Unlawful Business Practices

Defendant asserts that "the Great Value herbs and spices [Plaintiffs] purchased are fully compliant with all applicable laws," and that the complaint therefore cannot state a claim for "unlawful" business practices under the Unfair Competition Law ("UCL"), California Business and Professions Code section 17200 *et seq.*  Walmart's framing of the "unlawful" claim is disingenuous, because it wrongly suggests that only violations of an FDA or USDA regulation can provide the basis for an "unlawful" claim.[3]

As the California Supreme Court has said the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under § 17200. *Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (1992).  Virtually any law or regulation—federal or state, statutory or common law—can serve as predicate for a §17200 "unlawful" violation. Thus, if a "business practice" violates any law—literally—it also violates § 17200 and may be redressed under that section.  *People v. E.W.A.P., Inc.* 106 Cal.App.3d 315, 319 (1980).  Plaintiffs allege two violations of law.  First, Defendant has violated the California Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750 *et seq.* CAC, ¶ 93.[4]  Second, Plaintiffs allege that Defendant's conduct violates the Song-Beverly Act, California Civil Code section 1790 *et seq.*, which provides requirements for consumer warranties.  *Id.*  The allegations that Defendant has violated these statutes are sufficient to support the "unlawful" claim.

---

[3] Noticeably, Defendant does not challenge Plaintiffs' claims arising under the UCL's fraudulent and unfair prongs.  Accordingly, Defendant may not do so in reply. *See Colgate*, 345 F. Supp. 3d at 1196 (N.D. Cal. 2018) (citing *Zamani*, 491 F.3d at 997 (9th Cir. 2007)) (Orrick, J.) ("It is improper to raise a new argument in a reply brief.").

[4] Among other things, the CLRA makes unlawful:

"(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have. …

"(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. …

"(9) Advertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a) .

**E.    Plaintiffs Have Sufficiently Pled Their Claims for Breach of Implied Warranty**

Defendant next argues that Plaintiffs have failed to sufficiently plead breach of the implied warranty of merchantability because they do not allege that the Products "were without the most basic degree of fitness."  MTD at 15.  But this argument ignores well-settled law that permits implied warranty claims where plaintiffs allege that products are unsafe for consumption and/or contaminated with harmful substances.  *See, e.g., Kirchenberg v. Ainsworth*, 2022 U.S. Dist. LEXIS 10171, at \*14-15 (E.D. Cal. Jan. 18, 2022) ("In cases involving human food . . . a party can plead that a product violates the implied warranty of merchantability by alleging that the product was unsafe for consumption, contaminated, or contained foreign objects.") (citations omitted); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (contamination is a basis for implied warranty claim).

Consistent with this precedent, Plaintiffs have alleged that the Products, by nature of "contain[ing] (or risk[ing] containing) toxic Heavy Metals," CAC, ¶ 141, have been thereby "rendered . . . unsafe for human consumption."  *Id.*, ¶ 41.  *See also, e.g., id.*, ¶¶ 13-15 (alleging any level of consumption of lead, arsenic and cadmium is unsafe); *id.*, ¶¶ 16-23 (discussing Consumer Reports' analyses of Heavy Metals in spice products, including Defendant's).  The Complaint is also replete with allegations that Defendant's Products include undisclosed contaminant Heavy Metals that are unfit for human consumption based on the health risks.  *See generally id.*  Thus, the Complaint adequately alleges that Defendant's Products are unfit for their ordinary use. *See Rice-Sherman*, 2020 WL 1245130, at \*12 (N.D. Cal. Mar. 16, 2020) (Orrick, J.) (citing *Thomas v. Costco Wholesale Corp.*, No. 12-CV-02908-BLF, 2014 WL 5872808, at \*3 (N.D. Cal. Nov. 12, 2014) ("In the context of food cases, a party can plead that a product violates the implied warranty of merchantability by alleging, for example, that the product was not safe for consumption, ... or that the product was contaminated or contained foreign objects.") (internal citation and quotation marks omitted).  Consequently, Defendant's argument should be rejected.

**F.      Plaintiffs Have Sufficiently Pled Their Claims for Unjust Enrichment**

Defendant next argues that unjust enrichment is not an independent claim for relief under California law.  MTD at 16.  That contention is outdated.  The Ninth Circuit has held that "the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment." *Bruton v. Gerber Products Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("At the time when the district court dismissed this claim, California's case law on whether unjust enrichment could be sustained as a standalone cause of action was uncertain and inconsistent. But since then, the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed in an insurance dispute. *See Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000, 190 Cal.Rptr.3d 599, 353 P.3d 319 (2015); *see also Ghirardo v. Antonioli*, 14 Cal. 4th 39, 54, 57 Cal.Rptr.2d 687, 924 P.2d 996 (1996) (recognizing independent cause of action for unjust enrichment relating to real estate transaction); *see also Trazo v. Nestle USA, Inc*., 113 F.Supp.3d 1047, 1049 (N.D. Cal. 2015) ("To the extent the district courts concluded that the [claim] was nonsensical because it was duplicative or superfluous to [Plaintiffs'] other claims, this [was] not grounds for dismissal.").  Thus, "[u]nder California law, a cause of action for unjust enrichment may be pled as an independent claim" so long as there is "an actionable wrong to furnish a basis for relief."  *Soo v. Lorex Corp.*, 2020 WL 5408117, at *8 (N.D. Cal. Sept. 9, 2020); see also *Kochar, et al. v. Walmart, Inc.*, No. 3:21-cv-02343-JD, ECF No. 51, p. 1 (N.D. Cal. Filed April 25, 2022) ("The factual allegations in the complaint amply satisfy Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure.  This is true for the unjust enrichment and quasi-contract claim, which the Court declines to dismiss at the pleading stage.").

To that end, Plaintiffs have sufficiently alleged a claim for unjust enrichment.  Plaintiffs allege that "Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the proposed Class members' purchase of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products contained (or risked containing) toxic Heavy Metals.  This caused injuries to Plaintiffs and members of the proposed Classes because they would not have purchased the Products or would have paid less for

them if the true facts concerning the Products had been known." CAC, ¶ 170. Plaintiffs further allege that Defendant "accepted and retained" these benefits and it would be "unjust for Defendant to retain the benefit." *Id.*, ¶¶ 171-172. Accordingly, Plaintiffs have stated a valid claim for unjust enrichment.

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. However, if the Court determines that the pleadings are deficient, Plaintiffs request leave to amend to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).[5]


Dated: October 19, 2022                      **BURSOR & FISHER, P.A.**

                                             By:   */s/ Sean L. Litteral*


                                             L. Timothy Fisher (State Bar No. 191626)
                                             Sean L. Litteral (State Bar No. 331985)
                                             1990 North California Blvd., Suite 940
                                             Walnut Creek, CA  94596
                                             Telephone: (925) 300-4455
                                             Email:  ltfisher@bursor.com
                                                         slitteral@bursor.com

                                             Jonathan Shub (SBN 237708)
                                             Kevin Laukaitis*
                                             **SHUB LAW FIRM LLC**
                                             134 Kings Highway E, 2nd Floor
                                             Haddonfield, NJ 08033
                                             T: 856-772-7200
                                             F: 856-210-9088
                                             jshub@shublawyers.com
                                             klaukaitis@shublawyers.com

                                             Gary E. Mason*
                                             Danielle L. Perry (State Bar No. 292120)
                                             **MASON LLP**
                                             5101 Wisconsin Avenue NW, Suite 305
                                             Washington, DC 20016
                                             Tel: 202-640-1168
                                             Fax: 202-429-2294
                                             gmason@masonllp.com
                                             dperry@masonllp.com

---

[5] Plaintiffs do not oppose dismissal of their claims for negligent failure to warn.

Lori G. Feldman*
**GEORGE GESTEN MCDONALD PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Tel: 917-983-9321
lfeldman@4-justice.com
eservice@4-justice.com

David J. George*
Brittany L. Brown*
**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Tel: (561) 232-6002
Fax: (888) 421-4173
dgeorge@4-justice.com
bbrown@4-justice.com
eservice@4-justice.com

Michael Liskow (State Bar No. 243899)
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th Floor
New York, New York 10036
Tel: 212-899-1765
Fax: 332-206-2073
mliskow@calcaterrapollack.com

***Pro Hac Vice Application Forthcoming***

*Attorneys for Plaintiffs and the Proposed Classes*