UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN GAGETTA, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>WALMART, INC.,<br><br>　　　　　Defendant. | Case No. 3:22-cv-03757-WHO<br><br>**ORDERING GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

Plaintiffs filed this putative class action complaint alleging that they purchased herbs and spices from defendant Walmart, Inc., which contained or risked containing toxic heavy metals, that those metals are unsafe at any level, and that they would not have purchased those products, or would have paid less for them, had Walmart not omitted the risk from its labels. Walmart does not contest that these products may have contained heavy metals but argues the levels of the metals that could be in the products are safe, and so there is no injury from the risk. It filed a motion to dismiss, asserting that the plaintiffs failed to establish Article III standing, statutory standing, or standing for injunctive relief, and that plaintiffs failed to state claim for several causes of actions.

Though Walmart may be correct on the merits about the safety of its products, that is a disputed fact inappropriate to resolve at this stage of litigation. The plaintiffs plausibly alleged a theory of injury for standing purposes and for most of its causes of action based on the risk that the products contained toxic heavy metals. But Walmart correctly notes that the plaintiffs fail to state a claim for implied warranty of merchantability because the allegations are not plausible that the products they purchased actually contained toxic heavy metals. For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

Named plaintiffs Susan Gagetta and Tracie Gomez purchased several herbs and spices sold by Walmart under the Great Value brand, including chili powder, organic paprika, basil leaves, and ground cumin. Complaint ("Compl.") [Dkt. No. 1] ¶¶ 5, 7. They allege that the spices and herbs "contain (or have a risk of containing) unsafe toxic Heavy Metals" including lead, arsenic, and cadium. *See, e.g.*, *id.* ¶¶ 1, 2, 5-8. Their allegations are based on an article published in November 2021 by Consumer Reports,[1] which found that one-third of the herbs and spices it tested contained unsafe levels of arsenic, lead, and cadium, and found that Walmart's Great Value brand chili powder, organic paprika, basil leaves, and ground cumin contained levels that were of at least "some concern." *Id.* ¶¶ 2, 16-18; *see also* Walmart Motion to Dismiss ("Mot.") [Dkt. No. 25] Ex. A at 12-20. Plaintiffs assert that even very small exposures to these metals are dangerous to humans, and so Walmart's herbs and spices were "unsafe for human consumption." Compl. ¶¶ 12-15, 39, 41.

The products' labels did not contain warnings that the products contained or risked containing heavy metals. *Id.* ¶¶ 38, 56, 62-66. The plaintiffs contend that the omissions were related to Walmart's ongoing desire to rebrand itself as trustworthy. *See id.* ¶¶ 42-56.

The plaintiffs assert that they saw, read, and understood the labels on the products, and that they relied upon the omission of warnings about the potential dangers of the product when making the decision to purchase the herbs and spices. *Id.* ¶¶ 36-38, 40. Had they known the products contained or risked containing the heavy metals, the plaintiffs would not have purchased the products or would have paid less for them. *Id.* ¶ 1, 5, 6, 39. While they wish to purchase the products again in the future, they are "unable to determine if the Products are actually safe" because they cannot rely on the labels and packaging. *Id.* ¶¶ 6, 8.

The plaintiffs filed this complaint on behalf of themselves, a nationwide class, and a California subclass, asserting ten causes of action: (1)fraudulent acts and practices in violation of California's Unfair Competition Law ("UCL"), *id.* ¶¶ 79-89; (2) unlawful acts and practices in

---

[1] As discussed below, I take judicial notice of the article for the fact that the article published these findings, but not for the truth of the findings.

violation of the UCL, *id.* ¶¶ 90-100; (3) unfair acts and practices in violate of the UCL, *id.* ¶¶ 101-13; (4) violation of California's False Advertising Law ("FAL"), *id.* ¶¶ 114-23; (5) violation of California's Consumer Legal Remedies Act ("CLRA"), *id.* ¶¶ 124-34; (6) breach of the implied warranty under the Song-Beverly Act, *id.* ¶¶ 135-45; (7) breach of the implied warranty of merchantability, *id.* ¶¶ 146-58; (8) fraud, *id.* ¶¶ 159-65; (9) unjust enrichment, *id.* ¶¶ 166-77; and (10) negligent failure to warn, *id.* ¶¶ 178-87.

Walmart filed this motion to dismiss. *See* Mot. The plaintiffs opposed, ("Oppo.") [Dkt. No. 27], and Walmart replied, ("Repl.") [Dkt. No. 28]. I held a hearing at which counsel for both parties appeared.

## LEGAL STANDARD

### I.      Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

3

1  (citation omitted). Instead, the court "may review evidence beyond the complaint without
2  converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted).
3  Once the moving party has made a factual challenge by offering affidavits or other evidence to
4  dispute the allegations in the complaint, the party opposing the motion must "present affidavits or
5  any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses
6  subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also*
7  *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

## II.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of

4

1  undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous
2  amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See*
3  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**III.  Rule 9(b)**

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake.  Under FRCP 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

**DISCUSSION**

**I.  Judicial Notice**

Walmart requests judicial notice of public statements from the FDA and USDA websites, attached to its motion as Exhibits B through E.  *See* Mot. 3 n.2.  Plaintiffs have not opposed the request.

The documents show that the FDA monitors, tests, and sets standards for metals in food, *see* Mot. Ex. B; that the FDA has a program for limiting children's exposure to toxic elements, *see* Mot. Ex. C, D; and that the USDA works with the FDA to reduce heavy metals in food, particularly in baby food, *see* Mot. Ex. E.  Walmart relies on these documents to support its arguments that all foods contain these metals and that if the FDA or USDA were concerned about levels in spices, they would regulate them.  *See* Mot. 12:26-13:10, 14:7-27.  But the websites do not directly support either assertion.[2]  And I may only take judicial notice of facts not subject to reasonable dispute if they are "generally known" or "can be accurately and readily determined

---

[2] The websites discuss steps the FDA has taken to reduce exposure to heavy metals, particularly from food and environmental sources, and especially for babies and children; but the sites do not say that the FDA and USDA are unconcerned about the risk of heavy metals in herbs and spice, or that the FDA and USDA find those levels safe.  *See* Mot. Exs. B, C, D, E.

United States District Court
Northern District of California

from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Neither applies here.

Even if Walmart's requested facts could be "accurately and readily determined" from the FDA and USDA websites, the websites themselves "are not regulations, guidelines, or even studies that conclusively establish that" the metals at issue are safe at any level. *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 845 (N.D. Cal. 2018). These assertions are therefore subject to reasonable dispute and not confirmed by the documents to be noticed. As such, I take judicial notice of the existence of these websites, but not of the truth of the facts asserted in them. *See id.*; *see also Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *1 (N.D. Cal. Sept. 1, 2010) (taking judicial notice of documents only "to the extent that [they are] not subject to reasonable dispute" (citing Fed. R. Evid. 201)).

## II.   Injury in Fact for Article III Standing

Walmart challenges the plaintiffs' standing to bring any of their claims, which is a challenge to my jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Walmart says the plaintiffs cannot show injury in fact because they do not allege that the products they purchased or consumed contained heavy metals, they do not allege that they suffered physical injuries, and they cannot assert economic injury if they cannot show the products contained metals. *See* Mot. 8:19-11:8. The plaintiffs' theory of injury is that they purchased products that they otherwise would not have purchased, or would have paid less for, had they known the products contained *or risked containing* certain heavy metals. *See* Oppo. 3:18-25.

A plaintiff must establish standing to bring claims, which at an "irreducible minimum" requires three elements: "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992). "A 'quintessential injury-in-fact' occurs when plaintiffs allege that they 'spent money that, absent defendants' actions, they would not have spent." *Zeiger*, 304 F. Supp. 3d at 846 (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)); *see also Moreno v. Vi-Jon, LLC.*, No. 21-56370 (9th Cir. December 14, 2022) ("[Plaintiff] alleged that he wouldn't have purchased or paid as much for [defendant's] products if he had known the truth

6

about their effectiveness.  That is sufficient for an Article III injury." (citations omitted)); *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *3 (N.D. Cal. May 5, 2021) ("[B]ecause [plaintiff] alleges she purchased the [defendant's product] and would not have if she knew they were mislabeled, the Court finds she has Article III standing to bring this case."); *Berke v. Whole Foods Mkt., Inc.,* No. CV 19-7471 PSG (KSX), 2020 WL 5802370, at *6 (C.D. Cal. Sept. 18, 2020) (same).  And, "[c]laims brought under California's UCL must satisfy federal standing requirements under Article III."  *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL 2953069, at *3 (N.D. Cal. July 19, 2012) (citing *Birdsong v. Apple,* 590 F.3d 955, n. 4 (9th Cir. 2009)).

In *Zeiger*, I found that the plaintiffs sufficiently pleaded injury-in-fact where they alleged that the pet food they bought "contain[ed] 'material and significant levels of arsenic and lead,' 'known dangerous toxins for both humans and animals'"; that the defendants "knew or should have known of the presence of these contaminants"; that the products contained no "warning label or disclos[ure] [of] the presence of these contaminants" but did "contain various health claims and promises"; and that the plaintiffs "would not have purchased the food if [any level of contaminants] was fully disclosed."  304 F. Supp. 3d at 842, 846.  The allegations are different from those made here—for example, in addition to alleging the products contain heavy metals because a Consumer Report survey indicated one-third of tested herbs and spices contained the metals, Compl. ¶¶ 1, 5, 7, 17-18, these plaintiffs also allege that there was a *risk* that the products contained those metals, *id*. ¶¶ 1, 4.  And like the plaintiffs in *Zeiger*, here the plaintiffs plead economic injury by asserting that they would not have purchased the products or would have paid less for the products had they known the truth about the products.  Specifically, the plaintiffs' theory of economic injury is that they would not have purchased or paid as much had they known the products risked containing heavy metals.  *Id.* ¶¶ 5-8.  That is plausible because the plaintiffs allege that there is no safe level of these metals, because the Consumer Report stated at least one-third of the tested products and all of Walmart's tested products contained unsafe levels of heavy metals, and because Walmart does not contest that its products probably contain heavy metals.  Accordingly, the plaintiffs' allegations that the risk existed and that they would not have

7

1  purchased the products had they known the risk are plausible.  The plaintiffs successfully pleaded
2  economic injury for standing.

3  Walmart does not contest that its products risk containing heavy metals, that those metals
4  are dangerous to consume, or that the plaintiffs would have purchased the products for the same
5  price had the desired warnings been present.  Instead, Walmart says that "these elements in the
6  nation's food supply are natural and cannot be avoided" and that the FDA does not require the
7  labels. *See* Mot. 5:11-24.  Walmart contends that under the plaintiffs' theory, nearly all foods
8  would require these warning labels because nearly all agricultural products risk containing these
9  metals. *See id.* 10:5-20.  In other words, Walmart says that even if the products contain these
10 metals, they are not unsafe because all foods have these levels of metals, and so the plaintiffs
11 cannot plead injury because the products were actually safe.  But whether these levels of metals
12 are safe is a hotly contested issue of fact (and as discussed above, not directly addressed by any of
13 Walmart's requests of judicial notice).  Accordingly, they are inappropriate to resolve on a motion
14 to dismiss because they go to the merits of the plaintiffs' claims.

15 Each of Walmart's cited cases is distinguishable.  In *Pels v. Keurig Dr. Pepper, Inc.*, the
16 plaintiff alleged that the defendant's bottled water contained arsenic and the plaintiff purchased
17 the water but did not allege the bottled water he purchased contained arsenic, and so the court
18 dismissed with leave to amend and replead the claim.  No. 19-CV-03052-SI, 2019 WL 5813422,
19 at *5 (N.D. Cal. Nov. 7, 2019).  Because the theory of injury was that the plaintiff bought a
20 contaminated product, to plead injury he had to allege that the product *he* purchased was
21 contaminated.  Here the plaintiffs' theory of injury is that they bought a product that they
22 otherwise would not have purchased, or would have only purchased at a lower price, had they
23 known it risked containing heavy metals.  The plaintiffs here do allege that the products they
24 purchased risk containing heavy metals (and again, Walmart does not contest this).

25 In *Boysen v. Walgreen Company*, the plaintiff claimed economic injury based on
26 purchasing fruit juice containing levels of arsenic higher than those permitted by the FDA for
27 bottled water.  No. C 11-06262 SI, 2012 WL 2953069, at *1-2, 5 (N.D. Cal. July 19, 2012).  The
28 court dismissed for lack of standing in part because the arsenic levels did not exceed the levels of

8

arsenic permitted by the FDA's issued guidance for fruit juice, and because the FDA issued reports stating that those levels of arsenic in fruit juice were safe. *Id.* at *5-6. The *Boysen* court also held that the plaintiff did not establish economic injury for standing because he did not plead that the product (juice) was unfit for its intended use (consumption), or that it performed at a lower level than comparable products or less well than advertised. 2012 WL 2953069, at *6.

While persuasive, that case is also distinguishable. First, while Walmart presented FDA websites and statements about heavy metals in food products, the exhibits show only that the FDA monitors foods and that these metals are unsafe at particular levels; they do not definitively show that Walmart's products meet FDA guidelines or that all of its spices and herbs are safe. *Compare* Mot. Exs. B-E *with Boysen*, 2012 WL 2953069 at *5-6. Second, the theory of injury differs. The *Boysen* court noted that the plaintiff pleaded that arsenic and lead are harmful toxins and that the products contained those toxins but not that the levels of arsenic and lead in those products were "likely to cause physical harm." *Boysen*, 2012 WL 2953069 at *7. Here the plaintiffs' economic injury does not depend on allegations that they would not have purchased the spices or herbs or would have paid less for them had they known the products contained heavy metals. *Cf. id.* ("Put simply, plaintiff only alleges that he purchased and consumed the fruit juices, but that the levels of lead and arsenic in defendant's product were unsatisfactory to him."). Rather, the plaintiffs establish economic injury by alleging they would not have purchased the spices or would have paid less had they known the products *risked* containing heavy metals. This theory of injury—though perhaps not the strongest—does not require the plaintiffs to show they were physically injured by the defendant's products because it relies on the defendant's alleged failure to provide all relevant information to purchasers. And again, Walmart does not contest that each product purchased by each plaintiff risked containing heavy metals.

Finally, in *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, the plaintiffs alleged that the defendants' children bath products contained carcinogens. No. C 09-1597 CW, 2010 WL 3448531, at *1 (N.D. Cal. Sept. 1, 2010). Like here, the plaintiffs pleaded two injuries for standing purposes: the "risk of harm to their children resulting from their exposure to carcinogenic baby bath products" and the "economic harm resulting from the purchase of these

9

contaminated, defective bath products." *Id.* at *2. The court rejected the first argument as insufficient and too attenuated to confer standing because the plaintiffs did not allege that the substances in the products were "in fact carcinogenic for humans," did not plead that the levels of those contaminants "caused harm or create[d] a credible or substantial risk of harm," or than any "palpable risk exists." *Id.* at *3. But the court also rejected the economic injury as a theory for standing where the plaintiffs pleaded they would not have purchased the product if they knew about the presence of the contaminants, because the plaintiffs failed to "plead a distinct risk of harm from a defect in Defendants' products that would make such an economic injury cognizable." *Id.* at *4. The court said the plaintiffs failed to plead facts showing the products were "defective or otherwise unfit for use" or that they "overpaid or otherwise did not enjoy the benefit of their bargain." *Id.* at *4.

While the case is also persuasive, ultimately the pleadings distinguishably differ. Here, the plaintiffs' economic injury similarly relies on the risk that the products contained the contaminants, but they *do* plead a "distinct risk of harm" from the specific metals—including the various health impacts related to any level of exposure to these metals, *see* Compl. ¶¶ 12-15—and they plead that they "overpaid" for the products, *see, e.g.*, *id.* ¶¶ 39, 41, 83, 95, 106, 108.[3] The "actual economic harm," then, is that they overpaid for products that they did not know risked containing these metals, which they allege are unsafe at any level, and which Walmart does not contest are likely present in the products. Accordingly, *Herrington* is distinguishable.

Viewing the allegations in the light most favorable to the plaintiffs, they have sufficiently pleaded injury-in-fact to establish standing.[4]

**III.     Statutory Standing**

Walmart's argument about "plausible reliance" does not clarify the legal basis on which it relies. Based on the cited cases, it seems that Walmart is arguing the plaintiffs failed to establish

---

[3] They also plead that the products are "unfit" for consumption or ordinary use, as discussed further below. *Infra* Part V.B.

[4] The plaintiffs' claims regarding ground ginger are DISMISSED with leave to amend because as Walmart points out, no plaintiffs allege that they purchased ginger.

10

1    statutory standing for their UCL, CLRA, and FAL claims due to failure to establish reliance on

2    Walmart's alleged omissions.  *See* Mot. 12:9-13:23.

3          Plaintiffs bringing claims under the UCL, the CLRA, and the FAL must satisfy statutory

4    standing requirements.  *See Maisel*, 2021 WL 1788397, at *3-4.  To establish standing under the

5    CLRA and FAL, plaintiffs must show economic injury and also "a plaintiff must claim to have

6    relied on an alleged misrepresentation."  *Id.* at *3 (first citing *Kwikset Corp. v. Superior Ct.*, 51

7    Cal. 4th 310, 322 (2011); and then citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350,

8    1367 (2010)).  And to establish standing for a UCL claim, plaintiffs must plead both an injury in

9    fact and that they "ha[ve] lost money or property as a result of the unfair competition," meaning

10   "actual reliance" on the unfair competition "is necessary for standing."  *Id.* at *4 (first citing Cal.

11   Bus. & Prof. Code § 17204, then citing *Kwikset Corp.*, 51 Cal. 4th at 326-27, and then citing *In re*

12   *Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009)).

13         As discussed above, the plaintiffs allege sufficient facts to plausibly plead economic

14   injury.  *See Kwikset Corp.*, 41 Cal. 4th at 322, 326-27; *Durell*, 183 Cal. App. 4th at 1367; *see also*

15   *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) ("Under California law, the

16   economic injury of paying a premium for a falsely advertised product is sufficient harm to

17   maintain a cause of action.").  They also plead that they saw, read, and understood the products'

18   labels before purchasing the products, relied on the labels and their omission of the risk of heavy

19   metals in making their purchases, and would not have bought the products or would have paid less

20   for the products but for the omissions.  Compl. ¶¶ 36-40.  These allegations are sufficiently

21   plausible to show that the omissions on the product labels "caused the plaintiff[s] to purchase

22   products they might not have otherwise purchased."  *See Maisel*, 2021 WL 1788397, at *4.  The

23   plaintiffs plausibly alleged reliance on the misrepresentations to meet the statutory standing

24   requirements for the UCL, CRLA, and FAL.

25         Walmart relies on *Myers v. BMW of North America, LLC*, to argue that the plaintiffs did

26   not plead that they relied on the alleged omissions.  No. 16-CV-00412-WHO, 2016 WL 11791913

27   (N.D. Cal. Dec. 19, 2016).  But *Myers* says that "[t]o prove reliance on an omission, a plaintiff

28   must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-

United States District Court
Northern District of California

producing conduct," which plaintiffs can do by showing that "had the omitted information been disclosed, [they] would have been aware of it and behaved differently." *Id.* at *3. As in *Myers*, here the plaintiffs plead that "had a disclosure been made" they would have been aware of it because they would have read it on the label of the products they purchased, and then made different purchasing decisions. *Id.*; *see* Compl. ¶¶ 36-40. *Myers* supports the plaintiffs' position.

Walmart also asserts that the plaintiffs cannot prove "reasonable reliance" because "nearly every food product sold in stores will 'risk containing' heavy metals in trace amounts." Mot. 12:19-28. But case law does not require plaintiffs to plead that their reliance was reasonable. *Cf. Maisel*, 2021 WL 1788397, at *3; *see also Kwikset Corp.*, 51 Cal. 4th at 326-27 (discussing reliance element). The reasonableness of the plaintiffs' reliance may be an appropriate question of fact for a later stage of litigation.

The plaintiffs established statutory standing for their UCL, CLRA, and FAL claims.

**IV.    Standing to Seek Injunctive Relief**

The defendants say that the plaintiffs fail to establish standing for injunctive relief because the plaintiffs now know the risk that the products contain heavy metals and that knowledge can inform future purchase choices. Mot. 11:10-12:6. The plaintiffs contend that knowledge learned during litigation is insufficient to defeat standing for injunctive relief and that it is enough that they pleaded they would purchase the products in the future if they were not misleadingly labeled. Oppo. 9:2-10:12.

To establish standing for injunctive relief, a plaintiff must plead a "threat of injury" that is "actual and imminent, not conjectural or hypothetical." *Davidson*, 889 F.3d at 967 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Once plaintiffs have been wronged, they are entitled to injunctive relief only if they can show that they face a "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citations and internal punctuation omitted). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson*, 889 F.3d at 967 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "[A] previously deceived customer may have standing to seek an injunction

12

against false advertising or labeling" based on "inability to rely on the advertising in the future," "even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 967, 969 (quoting *Summers*, 555 U.S. at 493). "Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id.*; *see also Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022) (applying the *Davidson* rule to omissions on labels).

Here the plaintiffs allege that they would like to purchase the herbs and spices in the future but cannot rely on the lack of warning on the label that the products risk containing heavy metals. Compl. ¶¶ 6, 8. Under the rule established in *Davidson*, that is sufficient to establish standing for injunctive relief. *See Davidson*, 889 F.3d at 970-71; *Brown*, 2022 WL 1471454, at *11.

Walmart also relies on *Davidson* to support its argument, Oppo. 11:10-12:6, but I am not persuaded by its selective citations that another outcome is warranted here. And contrary to Walmart's assertions, the plaintiffs do not plead only "some day intention[s]", *see id.* at 12:1-6, but rather plead specifically what is required by binding Ninth Circuit authority: that they "desire to purchase the Products from Defendant" in the future but cannot do so in an informed manner because they cannot rely on the labels going forward. Compl. ¶¶ 6, 8. Whether these plausible allegations are true is a question for another stage of the litigation. For now, the plaintiffs establish standing for injunctive relief.

### V. Rule 12(b)(6)

Finally, Walmart argues the UCL, implied warranty, and unjust enrichment claims should be dismissed because the plaintiffs failed to state a claim. I address each in turn.

#### A. UCL Unlawful Prong (Cause of Action 2)[5]

Walmart contends that the plaintiffs fail to state a claim for breach of the UCL because its

---

[5] The plaintiffs assert that Walmart failed to challenge the UCL claims brought under the fraudulent and unfair prongs on the statute and so waive any argument as to those claims. Oppo. 12 n.3. Walmart apparently concedes that it did not challenge the fraudulent or unfair prongs under FRCP 12(b)(6) for failure to state a claim but notes that its arguments about standing and

products "are fully compliant with all applicable laws." Mot. 14:2-6. Specifically, Walmart argues that its spices and herbs comply with the FDA and USDA because the agencies "have expressed no concern regarding levels of naturally occurring metals in the food supply of herbs and spices." *Id.* 14:7-28. In turn plaintiffs say that the UCL claims can and do rely on violations of other laws, including the CLRA and Song-Beverly Act. Oppo. 12:4-20.

"The UCL prohibits 'unfair competition,' which is broadly defined to include 'three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527, 540 (1999)). The unlawful, unfair, and fraudulent prongs each "capture[] a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). Different tests apply to each prong to determine whether a plaintiff stated a claim under each prong. *See id.* at 1204-05. The unlawful prong requires showing the defendants violated "another 'borrowed' law," and "[v]irtually any state, federal, or local law can serve as the predicate for an action under section 17200." *Davis*, 691 F.3d at 1168 (citations omitted); *see also Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 758 (N.D. Cal. 2019) ("Violation of almost any federal, state, or local law may serve as the basis for a claim under the unlawful prong of the UCL." (quoting *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838-39, 33 Cal. Rptr. 2d 438 (Cal. Ct. App. 1994))).

Walmart asserts that the plaintiffs cannot state a claim for unlawful practices because its products fully comply with all applicable laws, in large part because the FDA and USDA do not have guidelines or standards concerning heavy metals in herbs and spices. Mot. 14:2-15:6. The problem with Walmart's argument is that the plaintiffs' complaint asserts Walmart violated the UCL's unlawful prong because it violated the CLRA and the Song-Beverly Act, Compl. ¶¶ 93-94, not that the products violate FDA or USDA regulations. That is to say, even if Walmart is correct that the products comply with relevant federal regulations, it is possible the company violated the CLRA or Song-Beverly Act—two separate and distinct state statutes. And while I dismiss

---

reliance apply equally to those causes of action. Repl. 10 n.7.

1   plaintiffs' Song-Beverly Act claims below, Walmart does not challenge the CLRA cause of action
2   except to say the plaintiffs failed to plead injury or reliance, *see* Repl. 10:8-15, arguments that I
3   previously rejected.  Because that cause of action is viable, it may serve as the predicate violation
4   to support the UCL claims.  The plaintiffs therefore sufficiently pleaded a claim under the UCL's
5   unlawful prong.

**B. Implied Warranty (Causes of Action 6, 7)**

The plaintiffs allege that Walmart breached the implied warranty under the Song-Beverly Act, Compl. ¶¶ 135-45, and breached the implied warranty of merchantability, *id.* ¶¶ 146-58. Walmart contends the plaintiffs do not plead a claim under those causes of action because they do not allege that the products "were without the most basic degree of fitness," were "worthless," or "failed to perform their most basic function of flavoring or seasoning."  Mot. 15:8-23.  I agree with Walmart.

"The California Commercial Code implies a warranty of merchantability that goods '[a]re fit for ordinary purposes for which such goods are used.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (quoting Cal. Com. Code § 2314(2)(c)).  "The implied warranty provides for a minimum level of quality" and a breach of that warranty "occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Id.* (first quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296, 44 Cal. Rptr. 2d 526 (1995); then quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406, 7 Cal. Rptr. 3d 546 (2003)).  And "[u]nder the Song–Beverly Act, 'every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable.'" *Atienza v. FCA US LLC*, No. 3:17-CV-00977-WHO, 2018 WL 6460431, at *5 (N.D. Cal. Dec. 10, 2018) (quoting Cal. Civ. Code § 1792).  The same "substantive elements" apply under the implied warranty of merchantability and the Song-Beverly Act: products must "(1) pass without objection in the trade under the contract description; (2) [be] fit for the ordinary purposes for which those goods are used; (3) [be] adequately contained, packaged, and labeled; and (4) conform to the promises or affirmation of fact made on the container or label." *Birdsong*, 590 F.3d at 958 n.2. To state a claim for breach of the implied warranty of merchantability or the implied warranty

15

1   under the Song-Beverly Act, then, a plaintiff may "show that the product 'did not possess even the
2   most basic degree of fitness for ordinary use.'" *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d
3   877, 896 (C.D. Cal. 2013) (citation omitted). "Crucial to the inquiry is whether the product
4   conformed to the standard performance of like products used in the trade." *Id.* (quoting *Pisano v.*
5   *Am. Leasing,* 146 Cal. App. 3d 194, 198, 194 Cal. Rptr. 77 (1983)).

6   In *Liou v. Organifi, LLC*, the court determined that the plaintiff failed to allege a breach of
7   the implied warranty of merchantability where he asserted that the defendants falsely stated their
8   juice provided particular health benefits, but did not plead that the juice failed to serve its
9   "ordinary" use—of being juice. 491 F. Supp. 3d 740, 746-47, 749 (S.D. Cal. Oct. 1, 2020).
10  Similarly, the court in *Strumlauf v. Starbucks Corporation* found that the plaintiffs failed to state a
11  claim for breach of the implied warranty of merchantability where they alleged that Starbucks
12  failed to fill their coffee cups all the way, but not that the coffees were "unfit for consumption."
13  192 F. Supp. 3d 1025, 1028, 1032 (N.D. Cal. June 17, 2016). And, the *Viggiano* court determined
14  the plaintiff failed to state a claim for breach of the implied warranty of merchantability where he
15  alleged the label misrepresented that the soda was "premium" and contained "all natural flavors,"
16  but did not allege the soda was "not merchantable or fit for use as a diet soft drink." 944 F. Supp.
17  2d at 896.

18  As discussed, at this stage the plaintiffs' theory of injury sufficient for standing is that they
19  were economically harmed because they would not have purchased the products or would have
20  paid less had they known the products risked containing heavy metals. The theory survives in part
21  because Walmart does not contest that their products risk containing these metals; rather, Walmart
22  says that most agricultural products have similar levels of metal and those levels are safe. Though
23  this is a question of fact that cannot be resolved on a motion to dismiss, it is relevant to the implied
24  warranty claims because it is unaddressed by the complaint and shows that the plaintiffs have not
25  alleged facts showing that that the products failed to "conform[] to the standard performance of
26  like products used in the trade." *Viggiano*, 944 F. Supp. 2d at 896. Nor do the plaintiffs plead
27  sufficient facts that the herbs and spices *they purchased* were unfit for their "ordinary purpose" as
28  food products, *Birdsong*, 590 F.3d at 958 n.2; *Liou*, 491 F. Supp. 749, or were "unfit for

1 consumption," *Strumlauf*, 192 F. Supp. 3d at 1028, 1032, or were "not merchantable or fit for use

2 as" herbs or spices, *see Viggiano*, 944 F. Supp. 2d at 896.  Plaintiffs' conclusory assertion that the

3 products were "unsafe for human consumption," *see* Compl. ¶¶ 39, 41, is not plausible unless they

4 can plead supporting facts showing that the herbs and spices purchased by the plaintiffs were

5 somehow distinct from those that are safe.

6     Therefore, the implied warranty of merchantability and the Song-Beverly Act claims are

7 DISMISSED.  I grant leave to amend because the plaintiffs asserted at the hearing that they may

8 be able to plead additional facts for these claims.

### C. Unjust Enrichment (Cause of Action 9)

Walmart argues that California does not recognize a standalone claim for unjust enrichment and the plaintiffs cannot assert a "duplicative" claim for unjust enrichment because they "already seek restitution under state law statutory claims."  Mot. 16:3-20.  But as I have previously explained, under California law "a court may 'construe' a claim for unjust enrichment as 'a quasi-contract claim seeking restitution.'" *Beluca Ventures LLC v. Aktiebolag*, No. 21-CV-06992-WHO, 2022 WL 3579879, at *4 (N.D. Cal. Aug. 19, 2022) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).  For that reason, I reject Walmart's request to dismiss the unjust enrichment claim based on the assertion that California does not recognize the cause of action.

Walmart's argument that the plaintiffs may only proceed with restitution-seeking claims if they waive their tort claims is unconvincing.  Federal Rule of Civil Procedure 8(d) permits plaintiffs to plead alternative and inconsistent theories of liability.  While restitution-seeking claims may ultimately be inconsistent with tort claims of fraud, plaintiffs may bring both claims at this stage of litigation.  Indeed, the Ninth Circuit specifically permitted a plaintiff to state a "quasi-contract" claim for unjust enrichment while simultaneously asserting tort and fraud claims under the common law, the UCL, and the FAL.  *See Astiana*, 783 F.3d at 756, 762.  It is true that Walmart cites post-*Astiana* district court orders that reached contrary results.  *See* Mot. 16:13-20 and Repl. 12:7-15 (citing *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-MD-02918-MMC, 2021 WL 4306018, at *24 (N.D. Cal. Sept. 22, 2021); *Silver v. Stripe Inc.*, No.

17

4:20-CV-08196-YGR, 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021)). But as support for dismissing the "duplicative" quasi-contract claims, both of those cases cite to pre-*Astiana* orders. *See In Re Hard Disk Drive*, 2021 WL 4306018, at *24 (relying on *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. 2011) for the assertion that "plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims"); *Silver*, 2021 WL 3191752, at *8 (relying on *Moose Run, LLC v. Libric*, No. 19-cv-01879-MMC, 2020 WL 3316097, at *5 (N.D. Cal. June 18, 2020), which in turn relies on *In re Apple*, 802 F. Supp. 2d at 1077). Here, *Astiana* is clearly applicable, dispositive, and binding. Accordingly, Walmart's motion to dismiss is DENIED on this basis.

## CONCLUSION

For those reasons, the implied warranty claims for causes of action 6 and 7 are DISMISSED with leave to amend, all claims based on ground ginger are DISMISSED with leave to amend, and the rest of the motion to dismiss is DENIED. The plaintiffs may file an amended complaint within twenty one days of the date of the filing of this order.

**IT IS SO ORDERED.**

Dated: December 19, 2022



William H. Orrick
United States District Judge