UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK

SUSAN GAGETTA,                          )
                                        )
                                        )
                Plaintiff,              )
                                        )
    vs.                                 ) No. C 22-3757 WHO
                                        )
WALMART, INC.,                          )
                                        )  San Francisco, California
                Defendant.              )  Wednesday
                                        )  December 14, 2022
_____)  2:00 p.m.


**TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:          BURSOR & FISHER, P.A.
                        1990 North California Boulevard
                        Suite 940
                        Walnut Creek, California 94596
                  BY:  **I. TIMOTHY FISHER, ESQ.**



For Defendant:          KING & SPALDING, LLP
                        50 California Street
                        Suite 3300
                        San Francisco, California 94111
                  BY:  **LIVIA M. KISER, ESQ.**
                       **SAMUEL R. DIAMANT, ESQ.**




*Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR*
        *Official Reporter - US District Court*
        *Computerized Transcription By Eclipse*

<u>Wednesday - December 14, 2022</u>                    <u>2:13 p.m.</u>

P R O C E E D I N G S

---oOo---

THE CLERK:  We will go ahead and get started in Case No. 22-3557, Gagetta versus Walmart, Incorporated.

Counsel, if you would please state your appearance for the record.

MR. FISHER:  Good afternoon, Your Honor.  Timothy Fisher of Bursor and Fisher for plaintiffs Gagetta and Gomez.

MS. KISER:  Good afternoon, Your Honor.  Liv Kiser with King and Spalding on behalf of defendant Walmart.

MR. DIAMANT:  Good afternoon, Your Honor.  Sam Diamant for defendant Walmart.

THE COURT:  Great.  Good afternoon to all of you.

Let me tell you how I'm looking at this.  This claim is a somewhat unusual one in that it's the risk that the spices and herbs contain heavy metals that caused the injury to the plaintiffs because the plaintiff wouldn't have purchased or would have paid less had they known of the risk.

And plaintiffs allege that one-third of similar products contain these metals, which the defendant doesn't deny.  The alleged proportion of the products with heavy metals seems to make this claim a plausible claim.

I don't doubt that the defendant down the road may show that heavy metals are naturally present in the products and all

1  agricultural products were -- and/or that they are not harmful,

2  but I think that's a merits question for another day.

3      This isn't like the cases where the plaintiff is alleging

4  contamination for the product they purchased and then isn't

5  able to describe it adequately.  This theory doesn't require

6  physical injury, just a failure to provide relevant information

7  to consumers.

8      Because of that theory I think economic injury is shown.

9  Standing for injunctive relief is shown.  The pleadings, not

10 that there is an FDA or USDA violation.  So the UCL claim under

11 *Song-Beverly* and the CLRA, I think, works.

12     I'm not sure about the implied warranty of merchantability

13 or the implied warranty claim because I think there the

14 plaintiff would have to show plausibly that they had suffered

15 damage from having the product ingested with the heavy metals,

16 and I'm not sure that's been adequately alleged.

17     So that's -- and I think the unjust enrichment claims,

18 following *Astiana* are okay.

19     So with that, Ms. Kiser, I'll let you see what you would

20 like to take on.

21         **MS. KISER:**  Yes.  Thank you, Your Honor.

22     The best that I would say is I do think that the FDA has

23 spoken on this issue.  This is not the *WellPet* case.  The FDA

24 has said that these metals are ubiquitous in the food supply.

25     I do take issue with the fact that the plaintiffs tried to

1  state a claim in reference to a *Consumer Reports* article that

2  itself is not scientific or based on any demonstrable

3  authority.

4      It seems to me that the FDA has said that these metals are

5  existing in the food supply, and I think that the FDA has

6  advised consumers that they can expect to eat metals when they

7  are eating food.

8      We think that this case is on all fours with the *Davidson*

9  case and in the *In Re Derma Products Company* case, where you

10  have to show that there was a duty to disclose in order to

11  state a claim.  And in our view, you know, the metals are in

12  minute amounts, if they exist at all.  There is going to be a

13  wide variability.

14      These should not be factual issues because the FDA has

15  shown on this subject.  It's not -- it's not that the -- the

16  question is whether there's a duty to disclose the existence of

17  naturally occurring heavy metals.

18      Our position is that there is no duty to disclose because

19  they are ubiquitous and the FDA has said they are ubiquitous.

20  So vis-a-vis the plaintiff's claims, you know, they can't just

21  say that they may contain metals because yes, they might.  The

22  FDA has told them that they might.  And they can't allege that

23  they can grow them themselves.  There is a lot of things in the

24  *Consumer Reports* articles that is not -- that are not true,

25  that are not accurate.

1    So from our perspective they are trying to state a claim

2    through reference to an article, and they are trying to suggest

3    that they would not have purchased them or they may not have

4    purchased them had they have known.  But the fact of the matter

5    is we need more information.  Is it just these five products?

6        If you look at Page 12 of their pleading, they identify

7    the products that they are alleging are somehow, you know,

8    falsely advertised or falsely labeled.  I mean, there is

9    nothing on there but a description of the product.  And the FDA

10   directs what needs to be on the product and the FDA has not

11   required a disclosure of the possibility of these trace levels

12   of these naturally occurring metals.

13       So for that reason we do not believe they state a claim.

14   We believe the reasoning in *In Re Berber* and in the *Sprout*

15   case, and the other cases that deal with metals even in baby

16   food, where they have found that plaintiffs have not stated a

17   claim, are more persuasive and directly on point.  And we,

18   therefore, think either the case should be dismissed for that

19   reason or they should at least have to plead more specifically

20   what are they alleging.

21       Are they alleging -- I mean, just because a product may

22   contain metals, I mean, that's ubiquitous.  How can we defend

23   against that?  There is going to be a wide variety of whether

24   even cumin from one source may or may not.  From the same field

25   you might find different levels of metals in the same food.  So

1  this is kind of a moving target.

2      We would ask if you're not going to dismiss the case, that

3  you at least require them to plead what these products

4  allegedly contain that causes them to be falsely advertised so

5  that we can respond on the merits because just "may contain"

6  is not sufficiently specific to help us defend against these

7  claims.

8          **THE COURT:**  Mr. Fisher.

9          **MR. FISHER:**  Yes, Your Honor.

10      I think a lot of what counsel just argued goes to the

11  merits of the claim and is not appropriate on a 12(b)(6)

12  motion.

13      In terms of the specifics of what we allege, we are not

14  alleging trace amounts or some sort of environmental

15  contamination that maybe we're all exposed to.  We're alleging

16  more than that.

17      And I think that's the upshot of the *Consumer Reports*

18  article, is that the amount that was determined in the testing

19  done by *Consumer Reports* was at a level that was significant

20  enough to pose health risks for children and adults.  That's

21  what the article said.

22      And the article also said that this comes from possibly

23  the manufacturing or packaging process, not from environmental

24  concerns like counsel is raising.

25      So we think Your Honor's tentative decision is correct.

1    We think this case is largely similar to the *Zeiger versus*
2    *WellPet* case.

3         The only thing we would ask, Your Honor raised about
4    implied warranty.  If Your Honor is inclined to dismiss that
5    claim, to give us leave to amend on that to see if we could
6    meet the threshold for that.

7         We think the risk of consumption of heavy metals is
8    sufficient to state a claim for implied warranty, but we would
9    like another shot at it if Your Honor does not think that we
10   have met the standard.

11        **THE COURT:**  So how do you address the duty argument
12   that Ms. Kiser was just making?

13        **MR. FISHER:**  Well, we allege that they had a duty to
14   disclose because this is material to consumers.  We ran the
15   survey of consumers that showed consumers care about whether
16   they are -- the products they are consuming contain heavy
17   metals.  And that is something consumers would want to know.
18   It's material.  And the class rumors, I think, have alleged
19   that they would have behaved differently had that been
20   disclosed to them.

21        So we think that rises to the level that they have a duty
22   to tell people that their products contain these dangerous
23   substances.

24        **THE COURT:**  With respect to the implied warranty, do
25   you think you have an obligation to allege that the products

1  that were sold were actually harmful; that they actually

2  contained the heavy metals?

3          **MR. FISHER:**  I don't know that the -- the law

4  requires that, and I'm not sure that's an issue that was fully

5  joined on the papers, Your Honor, but -- because I don't

6  think -- I think the standard is a little lower than that and

7  that we just have to show that there was harm in connection

8  with the purchase.

9          **THE COURT:**  And you have -- do you have any case that

10  would support the notion that the harm is a suspected possible

11  presence of heavy metals just because of the ubiquity of them

12  in products in general, as opposed to the products that your

13  client bought?

14          **MR. FISHER:**  Yeah.  Well, first of all, Your Honor, I

15  take issue with the idea that it is the ubiquity of them in the

16  products in general, which sounds sort of like the argument

17  counsel was making, that these things are everywhere.  And

18  that's not what our case is about, these substances are

19  everywhere.

20          We are saying that they are in greater quantities in these

21  products and that that's likely the result of something that's

22  happening in the manufacturing and packaging process, not just

23  that these things are everywhere and we're all exposed to them.

24  That's not the case we -- we are asserting here.

25          In terms of a case that -- I don't have one at my

1  fingertips, Your Honor; but if Your Honor would like us to

2  submit something, I would look at that and submit it to Your

3  Honor.

4          **THE COURT:**  All right.  Ms. Kiser, I'll give you the

5  last word here.

6          **MS. KISER:**  Thank you, Your Honor.

7      So, first of all, to the extent that they are alleging

8  that these five products that they plead in their pleading have

9  had suspected metals or have metals that were added as a result

10 of the manufacturing process, I don't see that in the

11 pleadings.

12     So if that's now what he's saying they are alleging, that

13 could be a lot of good information because, in fact, we will be

14 able to show through discovery that, in fact, we don't add

15 metals during the manufacturing and packaging process.

16     With respect to what consumers expect, my response would

17 be the FDA has not required a warning on these products because

18 it gives -- unless the metals are ubiquitous, and I'm right,

19 and I'm not talking about extra metals being added during the

20 manufacturing process, it sounds like everybody is in agreement

21 that they don't state a claim.

22     So I guess what I would say is we would like some

23 clarification and to the extent that what they are alleging is

24 this first idea that there is extensive metals added during the

25 manufacturing and packaging process, we would ask that counsel

1  amend the pleadings to be clear on that point, because that

2  would be very helpful for us in terms of defending against

3  these claims.

4      On the other hand, if the claim is, in fact, that

5  notwithstanding the fact that these are naturally occurring in

6  the environment and they are ubiquitous, it's still a claim

7  that they are trying to assert, that's a different case.

8      And we would like to be able to understand what it is that

9  we're defending against.  Because if it's the second claim,

10  then we would argue that that claim is preempted by the Federal

11  Food, Drug and Cosmetic Act because the FDA does not require

12  warnings on the labels with respect to these trace amounts of

13  metals and has stated publicly many times, including as

14  recently as, you know, last year and in the fall, that metals

15  are ubiquitous in the environment and they cannot be avoided.

16      And at least with respect to baby food and other foods,

17  the FDA does not recommend that people throw their food away

18  and, in fact, is concerned about people being concerned about

19  metals to the point where they are not -- they are trying to

20  avoid consuming these foods when, in fact, they are everywhere.

21      **THE COURT:**  All right.  I hear your argument.  Some

22  of them go right to the merits.  I will take a look at this

23  when I'm off the bench and I will get an order out as soon as I

24  can.  So thank you for that.

25      We do have a CMC also on the -- your proposed class

certification schedule plays off the timing of the defendant's

answer, which is fine.  Once that happens, I'd like you to send

me a stipulation on the specific dates that work for you that

are consistent with what your proposal was.

And then the -- I guess the other question was the timing

of ADR.  Have you decided that you would like to take a shot at

ADR after the meetings are resolved, or is that an open

question for you?

MR. FISHER:  Your Honor, for plaintiffs, we think

that's usually a good time, when the pleadings are settled.

Before money is spent on discovery and experts and things like

that, that's a good time for the parties to discuss resolution.

But it takes two to tango.

THE COURT:  How about the second -- the partner in

the tango?

MS. KISER:  So to the extent that we're talking

about, again, metals that are added during the manufacturing

and packaging process, we would absolutely want to do ADR,

because we can demonstrate that that's not happening.

And if that's really what the claims are based on, then I

think we should be able to resolve this pretty quickly.

THE COURT:  Okay.  Well, so why don't -- you want to

do private mediation.  So why don't I order that you do that

within three months of the pleadings being settled and then

require that you provide each other sufficient information so

1    that you can have an effective mediation.

2          So that's what I will do.  Include that in the stipulation

3    that you send to me.

4          And then we'll have a further case management conference

5    on June 13th, if the case hasn't otherwise resolved, at

6    2:00 p.m.

7          Mr. Fisher, is there anything else that's we ought to do

8    today?

9          **MR. FISHER:**  You'd like an updated statement a week

10   before or something like that, Your Honor?

11         **THE COURT:**  The rules tell you to send one a week

12   before.  And you don't have to repeat what you've already told

13   me, but I do like to know what's been going on.

14         **MR. FISHER:**  Nothing further from plaintiffs, Your

15   Honor.

16         **THE COURT:**  Ms. Kiser, anything else?

17         **MS. KISER:**  No.  Thank you, Your Honor.

18         **THE COURT:**  All right.  Thank you all.

19         (Proceedings adjourned.)

20

21

22

23

24

25

## <u>CERTIFICATE OF OFFICIAL REPORTER</u>

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, January 13, 2023